# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **DANIEL L. GIBSON,** ) | |
| Plaintiff ) | |
| v. ) | Civil Action No. 2:15cv00025 |
| ) | **MEMORANDUM OPINION** |
| **NANCY A. BERRYHILL,**[1] ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | By: PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Daniel L. Gibson, ("Gibson"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Berryhill is substituted for Carolyn W. Colvin, the previous Acting Commissioner of Social Security.

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Gibson protectively filed his applications for DIB and SSI on August 13, 2007, alleging disability as of October 1, 2010,[2] due to back and hip pain, depression, anxiety, difficulty concentrating, memory problems and constant worrying. (Record, ("R."), at 99-103, 123, 131, 160, 183.) The claims were denied initially and upon reconsideration. (R. at 49-52, 54-56, 61-63, 65-69, 71-72.) Gibson then requested a hearing before an administrative law judge, ("ALJ"), (R. at 73), and a hearing was held on May 19, 2009. (R. at 20-48.) By decision dated June 29, 2009, the ALJ denied Gibson's claims. (R. at 10-19.) Gibson appealed the ALJ's decision to the Appeals Council, which denied his request for review. (R. at 1-5.) Gibson then sought judicial review of the Commissioner's decision denying benefits. (R. at 6, 465.) On March 28, 2011, this court vacated the Commissioner's decision and remanded Gibson's claims for further development. (R. at 464-81.)

On remand, additional hearings before an ALJ were held on November 15, 2011, and November 15, 2012, at both of which Gibson was represented by counsel. (R. at 420-35, 436-63.) On November 30, 2012, the ALJ issued a decision denying Gibson's claims. (R. at 564-95.) Gibson appealed this ALJ's decision to

---

[2] Gibson amended his alleged onset date at his December 5, 2013, hearing before an ALJ. (R. at 398.)

the Appeals Council, and the Appeals Council remanded his claims. (R. at 603-08.) On remand, an additional hearing before an ALJ was held on December 5, 2013. (R. at 389-419.)

By decision dated January 21, 2014, the ALJ denied Gibson's claims. (R. at 360-79.) The ALJ found that Gibson met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2012. (R. at 363.) The ALJ found that Gibson had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date.[3] (R. at 363.) The ALJ found that the medical evidence established that Gibson had severe impairments, namely degenerative disc disease, status-post lumbar discectomy in 2005; congenital short right leg; club foot; adjustment disorder with depression/dysthymia; social anxiety; borderline to low average intelligence and cannibus abuse, but he found that Gibson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 363-66.) The ALJ found that Gibson had the residual functional to perform simple, routine, repetitive sedentary work[4] that did not require him to stand or walk for more than four hours or sit for more than six hours in an eight-hour workday; that required no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching or crawling; that did not require concentrated exposure to hazards, moving machinery or heights; and that required no more than occasional interaction with the public. (R. at 366-77.) The ALJ found that Gibson was unable to perform his past relevant work. (R. at 377.) Based on

---

[3] Therefore, Gibson must show that he was disabled between October 1, 2010, the alleged onset date, and December 31, 2012, the date last insured, in order to be eligible for DIB benefits.

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2016).

Gibson's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Gibson could perform, including jobs as a label pinker/cutter, an ampoule sealer and a printed circuit board touch-up screener. (R. at 378-79.) Thus, the ALJ concluded that Johnson was not under a disability as defined by the Act, and was not eligible for DIB or SSI benefits. (R. at 379.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2016).

After the ALJ issued his decision, Gibson pursued his administrative appeals, (R. at 351-55), but the Appeals Council denied his request for review. (R. at 347-50.) Gibson then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2016). This case is before this court on Gibson's motion for summary judgment filed June 13, 2016, and the Commissioner's motion for summary judgment filed August 16, 2016.

## II. Facts

Gibson was born in 1965, (R. at 99, 101), which classified him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) at the time of the ALJ's decision.

Charles Holland, Ph.D., a psychological expert, testified at Gibson's November 2012 hearing. (R. at 424-33.) Holland testified that his review of Gibson's medical records showed that he had undergone four psychological evaluations by Robert S. Spangler. (R. at 427.) In the first two of these evaluations, Holland said Gibson was diagnosed as suffering from "minor depression. (R. at

427.) Holland said at these evaluations Gibson's Global Assessment of Functioning, ("GAF"),[5] scores were moderate "at worst." (R. at 427.) Holland said that at the third evaluation, Spangler diagnosed Gibson with a dysthymic disorder and a social anxiety disorder. (R. at 427.) Holland said, however, that there was no evidence in Spangler's report that Gibson suffered from a social anxiety disorder. (R. at 428.) In fact, he said that he found no evidence in the medical records of Gibson suffering from an anxiety disorder. (R. at 428.) Holland noted that Gibson was not prescribed any psychiatric medications until October 2012, when he was prescribed a low dose of Celexa. (R. at 428.) Holland noted, however, that the prescribing nurse practitioner had stated in Gibson's medical records that he did not suffer from anxiety, depression, suicidal ideations or plan. (R. at 428-29.)

Holland testified that, based on his review of Gibson's records, Gibson would have a slight impairment with understanding and carrying out short, simple instructions, interacting appropriately with supervisors and co-workers and responding appropriately to changes in a routine work setting and a moderate impairment with carrying out detailed instructions, making judgments on simple work-related decisions, interacting appropriately with the public and responding appropriately to work pressure in a usual work setting. (R. at 432.) Holland defined a moderate impairment as one that imposes moderate limitations, but still allows an individual to function satisfactorily. (R. at 432.) Holland testified that limiting Gibson to simple, easy-to-learn, unskilled, repetitive work with minimal interaction with the public would take into account all of Gibson's mental work-related impairments. (R. at 433.)

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

In rendering his decision, the ALJ reviewed records from Dr. Vijay Kumar, M.D.; Dr. Galileo Molina, M.D.; Dr. Ahgnes A. Bolusa-Sabugo, M.D.; Dr. Gregory Corradino, M.D.; Wellmont Health Systems; Mountain View Regional Medical Center; Dr. David Wiles, M.D.; Dr. Timothy McBride, M.D.; Wise Medical Group Health Care Associates; Dr. Robert McGuffin, M.D., a state agency physician; Dr. Frank M. Johnson, M.D., a state agency physician; Robert S. Spangler, Ed.D.; Dr. Brian Strain, M.D., a state agency physician; Dr. Michael Hartman, M.D., a state agency physician; Diane L. Whitehead, Ph.D., a licensed clinical psychologist; Mary Elizabeth Ballard, M.A., a senior psychological examiner; and Wise County Behavioral Health.

The medical records show that Gibson has been treated for back problems since as early as 2005. (R. at 202-30, 233-58, 266, 275-85, 289-91, 297, 829-44, 902-17, 953-66.) Since Gibson does not contest the ALJ's finding as to his physical residual functional capacity, those records will not be described further. Rather, the court will concentrate on the evidence contained in the record of any mental impairments.

Medical reports from 2005 show that Gibson denied any psychiatric problems such as depression, anxiety, memory loss or confusion. (R. at 212, 215.) Beginning in 2010, it appears that Gibson told his medical doctor on an initial visit that he suffered from, and was being treated for, depression, although there is no mention of the condition in his doctor's treatment notes. (R. at 902, 953-63.) On May 2 and July 2, 2012, he denied any problems with anxiety and depression. (R. at 984, 987.)

On April 30, 2009, Robert S. Spangler, Ph.D., a licensed clinical psychologist, evaluated Gibson at the request of Gibson's attorney. (R. at 301-05.) Gibson had adequate recall of remote and recent events. (R. at 302.) He had good eye contact. (R. at 303.) His motor activity was calm, and his affect was appropriate. (R. at 303.) Gibson was cooperative, compliant and forthcoming. (R. at 303.) The Wechsler Adult Intelligence Scale-IV, ("WAIS-IV"), test was administered, and Gibson obtained a full-scale IQ score of 80. (R. at 304.) The Wide Range Achievement Test – Fourth Edition, ("WRAT-4"), Blue Form was administered, indicating that Gibson read at the fourth-grade level. (R. at 304.) His arithmetic computation also was at the fourth-grade level. (R. at 304.) Spangler diagnosed a mild to moderate adjustment disorder with depressed mood and borderline to low average intelligence. (R. at 305.) Spangler indicated that Gibson had a then-current GAF score of 55 to 60.[6] (R. at 305.)

Spangler completed a mental assessment, indicating that Gibson had a limited, but satisfactory, ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to maintain attention and concentration, to understand, remember and carry out simple job instructions and to behave in an emotionally stable manner. (R. at 298-300.) Spangler reported that Gibson had a limited, but satisfactory, ability to a seriously limited ability to deal with work stress, to maintain personal appearance and to relate predictably in social situations. (R. at 298-99.) He reported that Gibson had a seriously limited ability to understand, remember and carry out detailed instructions and to demonstrate reliability and no

---

[6] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

useful ability to understand, remember and carry out complex instructions. (R. at 299.) He also reported that Gibson could not manage his own benefits. (R. at 300.)

On July 24, 2009, Gibson was seen at Wise County Behavioral Health Services for depression. (R. at 306-29, 847-70.) He was diagnosed with major depressive disorder and nicotine dependence. (R. at 319.) His then-current GAF score was assessed at 50,[7] with his highest and lowest scores being 50 within the prior six months. (R. at 319.) The record shows that Gibson was seen from August through December 2009, and his mood was described as mildly depressed with a congruent affect. (R. at 334, 337-38, 340, 342, 878-96.)

State agency psychologist, Joseph Leizer, Ph.D., completed a Psychiatric Review Technique form, ("PRTF"), on Gibson on September 17, 2009. (R. at 503-04.) Based on Leizer's review of Gibson's medical records, he found that Gibson suffered from an affective disorder and an anxiety-related disorder. (R. at 503.) Leizer stated that Gibson had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation. (R. at 503-04.) Leizer stated that the record did not contain any evidence of significant restrictions in adaptive functioning. (R. at 504.) He said that Gibson "had a steady work history from 1993- 2007 in unskilled and semi-skilled work and would appear to continue to retain the mental capacity to perform all levels of work. (R. at 504.)

---

[7] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

State agency psychologist, Louis Perrott, Ph.D., completed a PRTF on Gibson on March 18, 2010. (R. at 533-34.) Based on Perrott's review of Gibson's medical records, he found that Gibson suffered from an affective disorder and an anxiety disorder. (R. at 533.) Perrott stated that Gibson had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation. (R. at 534.) Perrott stated that the record did not contain any evidence of significant restrictions in adaptive functioning. (R. at 534.) He said that Gibson "had a steady work history from 1993- 2007 in unskilled and semi-skilled work and would appear to continue to retain the mental capacity to perform all levels of work." (R. at 534.) Perrott opined that Gibson had a nonsevere mental impairment. (R. at 534.)

Spangler evaluated Gibson again on October 25, 2010. (R. at 919-23.) On this occasion, Spangler noted that Gibson was clean and appropriately dressed, cooperative, socially confident and that his "general activity level was slow." (R. at 919.) He said that Gibson appeared depressed, but generally understood the instructions for each task and demonstrated good concentration with appropriate persistence. (R. at 919.) Spangler said that Gibson was an adequate historian. (R. at 920.) He said that Gibson was alert, oriented, had adequate recall of remote and recent events, had good eye contact, with appropriate affect and depressed mood. (R. at 921.) He said that Gibson's judgment and insight were consistent with a low average intelligence. (R. at 921.) Spangler noted that Gibson's social skills were adequate and that he related to him well. (R. at 921.) Spangler diagnosed Gibson with depressive disorder, not otherwise specified, moderate; and a borderline to low-average intelligence. (R. at 923.) He placed Gibson's GAF score at 55. (R. at 923.)

Spangler completed another Medical Assessment Of Ability To Do Work-Related Activities (Mental) on October 25, 2010. (924-26.) On this assessment, Spangler indicated that Gibson had a limited, but satisfactory, ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to maintain attention and concentration and to behave in an emotionally stable manner. (R. at 924-25.) Spangler reported that Gibson had a seriously limited ability to understand, remember and carry out detailed and simple job instructions, to deal with work stress, to maintain personal appearance, to relate predictably in social situations and to demonstrate reliability and no useful ability to understand, remember and carry out complex instructions. (R. at 924-25.) He also reported that Gibson could not manage his own benefits. (R. at 926.) Spangler said that Gibson would, on average, be absent from work about two days a month due to his mental impairment and/or treatment. (R. at 926.)

Gibson returned to treatment with Wise County Behavioral Health Services in 2010 after being charged with distribution of a controlled substance and referred to Drug Court. (R. at 948.) On December 1, 2010, Gibson tested positive for, and admitted to recently using, marijuana. (R. at 946.) Gibson participated in MRT group therapy from March to July 2011. (R. at 928-42.) On March 14, 2011, Gibson told the group he had sold his medication to make some money. (R. at 942.)

Mary Elizabeth Ballard, M.A., a senior psychological examiner, and Diane L. Whitehead, Ph.D., a licensed clinical psychologist, completed a psychological evaluation of Gibson on December 21, 2011, at the request of Disability Determination Services. (R. at 972-78.) It was noted that Gibson's grooming and

hygiene were adequate, and he exhibited a flat affect with depressed mood. (R. at 973.) Gibson said that he suffered from depression and did not want to leave his house. (R. at 973.) Gibson said, "I have anxiety if I'm around other people. I feel worthless and that gets me down. … I have trouble remembering things, even simple dates. I worked all of my life and I'm embarrassed that I can't work. I have trouble concentrating and focusing. I have a low level of energy and no motivation. I rarely get out and if I do I have to force myself. I have to force myself to get up and bathe. I just feel worthless all the time." (R. at 973.) Gibson also complained of becoming irritated and agitated easily. (R. at 975.) He further complained of poor sleep and a low energy level. (R. at 975.) He said that he had panic attacks if he was around a lot of people, with racing heart, trembling and trouble breathing. (R. at 975.)

Gibson stated that he had never abused alcohol or any illegal drug. (R. at 973.) He said that he had never been incarcerated, but he did report his earlier drug distribution charges. (R. at 973-74.) Gibson exhibited an adequate degree of concentration and attention and followed all directions without repetition. (R. at 974.) It was noted that he had adequate judgment and insight and appeared to be functioning in the low average range of intelligence. (R. at 975.) It was noted that he had no difficulty relating to others and was capable of handling his own financial resources. (R. at 976.) It was noted that Gibson's response to testing showed that he was not completely forthright and exaggerated certain problems. (R. at 977.)

Ballard and Whitehead diagnosed Gibson with a dysthymic disorder and social phobia. (R. at 978.) They placed his GAF score at 55. (R. at 978.) They completed a Medical Source Statement Of Ability To Do Work-Related Activities

(Mental) on January 10, 2012, on which they stated that Gibson suffered no impairment in his abilities to understand, remember and carryout simple instructions or to make judgments on simple work-related decisions. (R. at 979-81.) They stated that Gibson had mild limitations in his abilities to interact appropriately with the public, supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 980.) They stated that Gibson had moderate, which was defined as more than slight limitation, but still able to function satisfactorily, limitations in his abilities to understand, remember and carry out complex instructions and make judgments on complex work-related decisions. (R. at 979.) They wrote, "…Gibson is exhibiting symptoms of social phobia which will impact his functioning when he is around other people. He tends to become nervous and may not exhibit the best judgment in the presence of other people." (R. at 980.)

Gibson's general practitioner, Dr. Bolusa-Sabugo, completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental) on September 18, 2012. (R. at 1007-09.) On this assessment, Dr. Bolusa-Sabugo indicated that Gibson had a limited, but satisfactory, ability to understand, remember and carry out simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 1008.) She reported that Gibson had a seriously limited ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment with the public, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out detailed and complex job instructions and to demonstrate reliability. (R. at 1007-08.) She reported that Gibson could manage his own benefits. (R. at 1009.) She said that Gibson would, on average, be absent from work more than two days a

month due to his mental impairment and/or treatment. (R. at 1009.) Oddly, Dr. Bolusa-Sabugo stated in her September 4, 2012, treatment note that anxiety and depression were not present in Gibson. (R. at 1014.)

Spangler evaluated Gibson again on September 29, 2012. (R. at 1002-05.) On this occasion, Spangler noted that Gibson was clean and appropriately dressed, cooperative, and that his "general activity level was slow." (R. at 1002.) Spangler said that Gibson seemed socially confident, anxious and depressed. (R. at 1002.) He said that Gibson generally understood the instructions for each task and demonstrated appropriate persistence, but he demonstrated erratic concentration secondary to anxiety and depression. (R. at 1002.) On this occasion, Spangler stated that Gibson reported "classic depressive symptoms since [2005] at a Major Depression level." (R. at 1002.) On this occasion, Gibson reported suffering from panic attacks since 2007. (R. at 1003.)

Spangler said that Gibson was alert, oriented, had adequate recall of remote and recent events and had fair eye contact, with flat affect and anxious and depressed mood. (R. at 1003.) He said that Gibson's judgment and insight were consistent with a low average intelligence. (R. at 1003.) Spangler noted that Gibson's social skills were adequate and that he related to him well. (R. at 1004.) Spangler diagnosed Gibson with major depressive disorder, recurrent, moderate to severe; a mild anxiety disorder, not otherwise specified; cannabis abuse in full remission; borderline to low average intelligence; and mild erratic concentration. (R. at 1004-05.) He placed Gibson's GAF score at 50-55. (R. at 1005.)

Spangler completed another Medical Assessment Of Ability To Do Work-Related Activities (Mental) on September 29, 2012. (R. at 998-1000.) On this

-13-

assessment, Spangler indicated that Gibson had a limited, but satisfactory, ability to follow work rules, to use judgment, to function independently and to maintain attention and concentration. (R. at 998.) Spangler reported that Gibson had a seriously limited ability to relate to co-workers, to deal with the public, to interact with supervisors, to understand, remember and carry out detailed, but not complex, and simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 998-99.) Spangler said that Gibson had no useful ability to deal with work stresses, to understand, remember and carry out complex instructions and to demonstrate reliability. (R. at 998-99.) He also reported that Gibson could not manage his own benefits. (R. at 1000.) Spangler said that Gibson would, on average, be absent from work more four days a month due to his mental impairment and/or treatment. (R. at 1000.)

On October 4, 2012, Gibson saw Christy R. Swinney, Nurse Practitioner with Wellmont Medical Associates. (R. at 1011-13.) Swinney conducted a depression screening, which led her to conclude that he suffered from moderate depression. (R. at 1011.) Nonetheless, she later stated in her report that anxiety and depression were "not present." (R. at 1011.) She also prescribed Celexa. (R. at 1013.)

Dr. Vijay Kumar, M.D., with Park Avenue Medical Associates, saw Gibson on June 24, 2013, and diagnosed him with a chronic anxiety disorder, generalized type, associated with panic attacks. (R. at 1030.) Dr. Kumar stated that Gibson's anxiety was controlled without medication. (R. at 1030.)

Spangler evaluated Gibson again on October 5, 2013. (R. at 1043-46.) On this occasion, Spangler noted that Gibson was clean and appropriately dressed, cooperative and that his "general activity level was slow." (R. at 1043.) Spangler said that Gibson seemed shy, anxious and depressed. (R. at 1043.) He said that Gibson generally understood the instructions for each task and demonstrated appropriate persistence and good concentration (R. at 1043.) On this occasion, Spangler stated that Gibson reported his mental problems began at birth. (R. at 1043.) Spangler said that Gibson's primary care physician had diagnosed a generalized anxiety disorder, and Gibson reported classic generalized anxiety disorder symptoms since childhood and classic depressive symptoms since 2008. (R. at 1043.) Gibson reported that his anxiety level was exacerbated by bills and that his depressive symptoms were worsening. (R. at 1043.)

Spangler said that Gibson was alert, oriented, had adequate recall of remote and recent events, and had good eye contact, with restricted affect and anxious and depressed mood. (R. at 1044.) He said that Gibson's judgment and insight were consistent with a boderline intelligence. (R. at 1044.) Spangler noted that Gibson's social skills were adequate and that he related to him well. (R. at 1044.) Spangler diagnosed Gibson with persistent depressive disorder, chronic, moderate; generalized anxiety disorder, moderate; and borderline intelligence. (R. at 1046.) He stated that Gibson did not have the judgment necessary to handle his financial affairs if awarded benefits. (R. at 1045.)

Spangler completed another Medical Assessment Of Ability To Do Work-Related Activities (Mental) on October 19, 2013. (R. at 1054-56.) On this assessment, Spangler indicated that Gibson had a limited, but satisfactory, ability to follow simple work rules and to maintain attention and concentration on

medication. (R. at 1054.) Spangler reported that Gibson had a seriously limited ability to relate to co-workers, to deal with the public, to use judgment with the public, to interact with supervisors, to function independently, to understand, remember and carry out simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 1054-55.) Spangler said that Gibson had no useful ability to deal with work stresses, to understand, remember and carry out complex and detailed job instructions and to demonstrate reliability. (R. at 1054-55.) He also reported that Gibson could not manage his own benefits. (R. at 1056.) Spangler said that Gibson would, on average, be absent from work more than four days a month due to his mental impairment and/or treatment. (R. at 1056.)

Dr. Kumar saw Gibson again on November 12, 2013, and diagnosed him with a generalized anxiety disorder. (R. at 1058.) Dr. Kumar completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental) on November 15, 2013. (R. at 1064-66.) Dr. Kumar indicated that Gibson had a limited, but satisfactory, ability to maintain personal appearance. (R. at 1065.) Dr. Kumar reported that Gibson had a seriously limited ability to follow work rules, to relate to co-workers, to deal with the public, to function independently, to understand, remember and carry out simple job instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 1064-65.) He said that Gibson had no useful ability to use judgment with the public, to interact with supervisors, to deal with work stresses, to maintain attention and concentration and to understand, remember and carry out complex and detailed job instructions. (R. at 1064-65.) Dr. Kumar reported that these limitations were due, in part, to "uncontrolled anxiety." (R. at 1065.) He also reported that Gibson could manage his own benefits. (R. at 1066.) He said that

Gibson would, on average, be absent from work more than two days a month due to his mental impairment and/or treatment. (R. at 1066.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2016). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2016).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(c), 416.927(c), if he sufficiently explains his rationale and if the record supports his findings.

Gibson argues that the ALJ erred by improperly determining his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-12.) In particular, Gibson argues that the ALJ erred by failing to give full consideration to the findings of Spangler on the severity of Gibson's mental impairments and the resulting effects on Gibson's work ability. (Plaintiff's Brief at 12-14.)

I find Gibson's argument unpersuasive. The ALJ noted that Gibson had seen Spangler for four separate psychological evaluations, but he held that Spangler's reports failed to support the severity of the limitations Spangler placed on Gibson's work-related abilities. (R. at 369-77.) Therefore, he said that he was according Spangler's reports little weight. (R. at 375.) I note that Spangler's assessments varied substantially from his written reports in a number of aspects. In particular, all of Spangler's written reports noted that Gibson was clean and appropriately dressed. Nonetheless, on his assessments, Spangler stated that Gibson had a seriously limited ability to maintain personal appearance. Spangler, in his written reports, noted good persistence and concentration, but in his assessment stated that Gibson's ability to maintain attention and concentration was limited. Also, Spangler consistently stated that Gibson related well to him, but then assessed his ability to relate to co-workers as seriously limited. I find that this evidence supports the ALJ's weighing of Spangler's opinions.

In weighing the medical evidence, the ALJ stated that he was giving significant weight to the opinions of Dr. Holland, who testified at Gibson's November 2012 hearing. Dr. Holland testified that Gibson had slight problems in understanding, remembering and carrying out simple instructions, interacting appropriately with supervisors, responding to changes in a routine work setting and moderate impairment in understanding, remembering and carrying out detailed instructions, making judgments about simple work-related decisions, interacting appropriately with the public and responding appropriately to work pressure and usual work-settings. Dr. Holland also testified that limitation to simple, easy-to-learn, repetitive, unskilled work with minimal interaction with the public would encompass these limitations. I find that Dr. Holland's opinions provide substantial evidence for the ALJ's findings as to Gibson's work-related mental abilities.

Based on the above, I find that substantial evidence exists to support the ALJ's weighing of the psychological evidence and his finding as to Gibson's residual functional capacity. Therefore, I find that substantial evidence exists to support the ALJ's conclusion that Gibson was not disabled and not entitled to benefits. An appropriate Order and Judgment will be entered.

DATED: February 28, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE